IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| LINDA SWEIGART, | : | |
| Plaintiff, | : | |
| v. | : | 5:06-CV-221 (CAR) |
| HERITAGE MEMORIAL FUNERAL HOME, INC., and MID-GEORGIA CREMATORY, | : | |
| Defendants. | : | |

## *ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT*

Currently before the Court is Defendants' Motion for Summary Judgment [Doc. 16]. Having read and considered the motion, the record in this case, the applicable law, and the arguments of the parties, the Court **GRANTS** Defendants' motion [Doc. 16].

### BACKGROUND

Plaintiff Linda Sweigart seeks damages based on Defendants' Heritage Memorial Funeral Home, Inc.'s and Mid-Georgia Crematory's handling of her father's remains after his death. Because this case is before the Court on summary judgment, the Court must view the facts in the light most favorable to the non-moving party–Plaintiff in this case–and draw all favorable inferences in favor of that party. Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 918, 918-19 (11th Cir. 1993).

1

On July 20, 2004, Plaintiff's father, Clyde Eugene Stewart, died of heart failure at the Houston Medical Center in Warner Robins, Georgia. Upon his death, the hospital made arrangements for Mr. Stewart's remains to be taken to Defendant Heritage Memorial Funeral Home ("Heritage Memorial"). The hospital had spoken to Allen Tatman, a funeral director at Heritage Memorial, and told Mr. Tatman to contact Ralph Mosely regarding funeral arrangements. Mr. Mosely was a friend of the deceased and was listed as the deceased's next of kin on the hospital's records.

Upon contact from the funeral director, Mr. Mosely, together with another friend of the decedent's, Stella Graham, arrived at the funeral home. Mr. Mosely presented the funeral director with a General Power of Attorney reflecting that the deceased had given him permission to act as his attorney in fact. Both Mr. Mosely and Ms. Graham informed the funeral director that Mr. Stewart wished to be cremated and placed in a niche next to his former wife at Glen Haven Memorial Gardens. In fact, almost six years earlier, on June 15, 1998, the deceased had purchased two side-by-side cremation niches, one for himself and one for his wife. On November 9, 1999, Mr. Stewart's wife died, was cremated, and placed in one of the niches.

While talking with the funeral director, both Mr. Mosely and Ms. Graham told the funeral director that the deceased had no living relatives. Upon learning this information, the funeral director directed Mr. Mosley sign an affidavit stating that he knew of "no living relatives of Clyde E. Stewart." In the statement, Mr. Mosely also requested that Defendants cremate the remains of his friend, and he agreed to hold

Defendants harmless for any claims resulting from the cremation. The funeral director also contacted the nursing home where the deceased had been residing to verify that he had no living relatives. Finally, the funeral director verified that the deceased had, in fact, purchased two side-by-side niches in Glen Haven Memorial Garden, one of which was utilized when the deceased's former wife passed away and was cremated. Later on July 20, 2004, the remains of the deceased were cremated.

On the evening of July 20, 2004, the deceased's daughter, Plaintiff Linda Sweigart, learned of her father's death.[1] At the time, Plaintiff was living in Denver, Colorado. Although Plaintiff had spoken with her father within six months before his death, she had not physically seen him in "many years." Plaintiff stated that she did not know that he had been residing in the Warner Robins Rehabilitation and Nursing Care Center, and she thought no one knew he had a daughter. The day after Plaintiff learned of her father's death, on July 21, 2004, she contacted Heritage Memorial and learned that her father's remains had been cremated.

Plaintiff alleges that the she was unlawfully deprived of her quasi-property right to the remains of her father. Plaintiff states that cremation is contrary and repugnant to the beliefs and practices of the deceased and Plaintiff as Potawatomi American Indians, and, due to the wrongful, intentional, and negligent action of Defendants, traditional Potawatomi burial ceremonies could not be performed. Plaintiff alleges causes of action for negligence, negligent infliction of emotional distress, and intentional

---

[1] Plaintiff learned of her father's death from her father's third wife, Louise Canady, whom her father had married after the death of his second wife and divorced prior to his own death.

infliction of emotional distress, and prays this Court will award both nominal and punitive damages.

## STANDARD OF REVIEW

Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996). Only a genuine issue of material fact will defeat a properly supported motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict. See id. at 249-52. In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence. See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. Celotex, 477 U.S. at 323 (internal quotation

marks omitted). If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(e); see also Celotex, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Ultimately, summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex, 477 U.S. at 323.

As explained below, the Court finds Plaintiff has not raised a genuine issue of material fact, and therefore the Court grants summary judgment for Defendants.

**DISCUSSION**

I.  Negligence Claims

Plaintiff's claims against Defendants sound in negligence. Plaintiff seems to allege two types of negligence claims against Defendants: a negligence claim based on the alleged mishandling of her father's corpse and/or a negligence claim based on the interference with her right to bury her father. Plaintiff states that because she is the next of kin to the deceased, she was the only person vested with the right to her father's body to ensure its proper handling and burial. Plaintiff contends Defendants were negligent in failing to investigate and identify her as her father's next of kin and thus, unlawfully cremated her father's remains in violation of Potawatomi American Indian beliefs.

Plaintiff's negligence claims, however, fail.

First, and foremost, Plaintiff's negligence claims fail because she has failed to establish that Defendants violated any duty of care. To maintain a negligence action, a plaintiff must prove the following elements: "(1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risk of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty." Brown v. All-Tech Inv. Group, 265 Ga. App. 889, 893 (2004) (citations omitted).

Plaintiff failed to provide, and the Court failed to find in its review of the record, any evidence that Defendants breached any general duty of care, such as that imposed by statute or common law, with regard to identifying Plaintiff as the next of kin or disposing of her father's body. Plaintiff asserts Defendants acted negligently in failing to identify her as the next of kin, when, in fact, the evidence shows the contrary: First, Defendants had been given hospital records which identified Mr. Mosely, not Plaintiff, as the decedent's next of kin and person to contact. Furthermore, Defendants were informed from both Mr. Mosely and Ms. Graham that they knew of no living relatives of their friend. Moreover, Defendants secured an affidavit from Mr. Mosely, who held a power of attorney executed by the decedent, stating he knew of no living relatives. Finally, Defendants contacted the nursing home where the decedent had been residing to verify there were no known next of kin.

Plaintiff also asserts that Defendants unlawfully cremated the decedent's remains, when, in fact, the evidence shows that Defendants were told by both Mr. Mosely and Ms. Graham that the decedent wished to be cremated, and he wished to placed in a previously purchased a cremation niche next to his former wife. Defendants verified that the deceased had, in fact, purchased two side-by-niches in Glen Haven Memorial Gardens almost six years earlier, one of which was utilized when the deceased's wife passed away and was cremated. From these facts it is clear that Plaintiff is unable to show that Defendants breached any duty regarding the identification of Plaintiff as her father's next of kin or regarding the cremation of her father's remains.

Even assuming *arguendo* that Plaintiff could prove a breach of duty, Plaintiff's negligence claims, construed by this Court to be mishandling a corpse and interfering with the decedent's burial, still fail.

  A.  <u>Negligent Mishandling of a Corpse</u>

A claim for negligent mishandling of a corpse is premised upon the presence of two elements: (1) a quasi-property right that exists in the dead body of a relative, and (2) the negligent breach of a contract to carry out the expressed wishes of the next of kin regarding the disposition of that dead body, i.e., burial, cremation, or anatomical donation. <u>See, e.g.</u>, <u>Bd. of Regents of the Univ. Sys. of Ga. v. Oglesby</u>, 264 Ga. App. 602, 607 (2003) (citations omitted). Here, Plaintiff satisfies the first element: as her father's next of kin, she had a quasi-property right in her father's corpse to ensure its

proper handling and burial.  See, e.g., Bauer v. N. Fulton Med. Ctr., 241 Ga. App. 568, 570 (1999) (citing Louisville & N. R.R. Co. v. Wilson, 123 Ga. 62, 64 (1905)); see also, Pollard v. Phelps, 56 Ga. App. 408, 415 (1937) ("[I]n the absence of testamentary disposition, a quasi property right belongs to the . . . next of kin."); Rivers v. Greenwood Cemetery, Inc., 194 Ga. 524, 525 (1942) ("[A] dead body is quasi property over which the relatives of the deceased have rights which the courts will protect.").

However, Plaintiff clearly fails to satisfy the second requirement because, as she admits, she had no contract with Defendants.  "[A]ll relevant precedent indicates that the Plaintiff[] must show the existence of some agreement where the family members of the decedent expressed their wishes regarding the disposition of the decedent's body." Wages v. Amisub of Ga., 235 Ga. App. 156, 157-58 (1998) (citations omitted).  Thus, in order for Plaintiff to enforce Defendants' legal duty to handle a corpse "non-negligently" and with "utmost dignity," Defendants must have been "contractually obligated."  McCoy v. Ga. Baptist Hosp., 167 Ga. App. 496, 497 (1983) ("There exists a legal duty, enforceable by the next of kin, which requires that a party contractually obligated to handle a corpse, do so non-negligently and with utmost dignity.").

Clearly, Plaintiff never entered into an express or implied contract for the handling or disposal of her father's remains or asserted a proprietary claim to the body. Neither party had contact with the other until the day after the decedent's remains were cremated.  Moreover, "the next of kin *must be known and have asserted some proprietary interest in the corpse,* and the defendant must have had a reasonable

8

opportunity to comply with such expressed wishes after pronouncement of the cause of death, autopsy, postmortem investigation, or embalming." Bauer, 241 Ga. App. at 244 (citing Wages, 235 Ga. App. at 158 (emphasis added)). Here, Defendants clearly had no knowledge of Plaintiff's existence prior to cremation. The hospital where Plaintiff's father died had no record of her as the next of kin, and the person listed as next of kin, Mr. Mosely, provided an affidavit stating that he knew of no living relatives of Mr. Stewart. Thus, any claim for negligent mishandling of a corpse fails.

  B. <u>Interference with Right to Burial</u>

  Under Georgia law, a decedent's surviving next of kin has the right to bury or dispose of his or her relative's body free of unlawful and unwarranted interference. <u>Habersham Mem'l Park v. Moore,</u> 164 Ga. App. 676, 678(1) (1982) ("In this state, an unlawful and unwarranted interference with the exercise of the right of burial is a tort. This right of burial belongs to the surviving spouse of the deceased and devolves upon the next of kin of the deceased only if no spouse survives.") (citations omitted). This right includes determining the time, manner, and place of burial. <u>Pyle v. Pyle</u>, 243 Ga. App. 398, 531 S.E.2d 738 (2000). Accordingly, the funeral home owes the surviving next of kin the duty not to willfully or wantonly interfere with the burial or disposal of his or her relative's body. <u>Id.</u> To show willful or wanton conduct in connection with burial rights, the plaintiff must demonstrate that a defendant's acts evidenced a willful intention to inflict the injury or else were so charged with indifference to the consequences as to justify finding a wantonness equivalent in spirit to actual intent. <u>Id.</u>;

9

see also McNeal Loftis, Inc. v. Helmey, 218 Ga. App. 628 (1995).

Based on the record, it is clear that Defendants showed no willful intent to inflict injury or were so indifferent to the consequences to justify such a claim. Defendants not only were informed by two individuals that no next of kin existed and that the decedent wished to be cremated, but Defendants also had the person holding the power of attorney execute an affidavit to that effect and independently verified both that the decedent had no living relatives – by calling the nursing home – and that he wished to be cremated – by verifying the decedent had, in fact, bought two side-by-side cremation niches, one of which was utilized by his former wife. There is absolutely no evidence of the kind of willfulness or wantonness to support an interference with a burial claim.

II.  Negligent Infliction of Emotional Distress

Defendants have also moved for summary judgment on Plaintiff's negligent infliction of emotional distress claims, arguing that Georgia's impact rule precludes Plaintiff's recovery. The Court agrees.

To prove a prima facie case of negligent infliction of emotional distress, a plaintiff must prove: (1) a physical impact to the plaintiff; (2) that the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes Plaintiff's mental suffering or emotional distress. Canberg v. City of Toccoa, 255 Ga. App. 890, 891 (2001). Thus, under Georgia law, a party claiming negligent infliction of emotional distress must show a physical impact resulting in physical injury. See Hang

v. Wages & Sons Funeral Home, Inc., 262 Ga. App. 177, 179 (2003).  Only where the plaintiff can establish pecuniary loss or where the defendant's conduct is malicious, wilful, or wanton can recovery be had without the necessity of an impact.  Id. at 180, 585 S.E.2d at 120.

In the instant case, it is clear that Plaintiff's negligent infliction of emotional distress is precluded by Georgia's impact requirement.  Plaintiff does not contend that she suffered any kind of injury or pecuniary loss.  Furthermore, the record is clearly devoid of evidence that Defendants' conduct was malicious, wilful, or wanton, or directed toward Plaintiff.  Thus, Plaintiff's claim for negligent infliction of emotional distress fails.

III.	Intentional Infliction of Emotional Distress

Finally, Defendants move for summary judgment on Plaintiff's claim for intentional infliction of emotional distress.  To state a claim for intentional infliction of emotional distress under Georgia law, the plaintiff must show that the defendant's behavior was so extreme or outrageous that "no reasonable man could be expected to endure it."  Hammer v. Slater, 20 F.3d 1137, 1144 (11th Cir. 1994) (quoting Bridges v. Winn-Dixie of Atlanta, Inc., 176 Ga. App. 227, 230 (1985)).  Whether a claim rises to the level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law.  Yarbray v. S. Bell Tel. & Tel. Co., 261 Ga. 703, 706 (1991).  A defendant's conduct "must be so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly

intolerable in a civilized community." Cornelius v. Auto Analyst, Inc., 222 Ga. App. 759, 762 (1996).

The evidence presented in this case clearly fails to meet this standard. In fact, the record supports that Defendants took appropriate steps to ensure the deceased had no surviving next of kin and to ensure the proper handling of the decedent's remains. Thus, Plaintiff's claim for intentional infliction of emotional distress fails.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. 16] is hereby **GRANTED**.

**SO ORDERED** this 16th day of August, 2007.

s/ C. Ashley Royal<br>
C. ASHLEY ROYAL<br>
United States District Judge

SSH/aeg